SHIRLAND vs. THE MONITOR IRON WORKS COMPANY.

*(1) Evidence. (2) Agency for both vendor and vendee.*

1. The question being whether certain machinery was sold by plaintiff to the defendant company, and by it contracted to be sold to M., or whether it was sold directly by plaintiff to M., without any contract of sale between plaintiff and defendant, and there being conflicting evidence on that question, it was error to admit evidence of declarations made by M., subsequent to the sale, to the effect that he had contracted with defendant as the owner of the property.
2. The same person cannot act as agent for both parties in the purchase and sale of property, without their consent.

APPEAL from the Second County Court of *Brown* County.

The complaint alleges that in October, 1874, plaintiff sold and delivered to defendant a boiler, steam engine, and circular rig for a saw-mill, of the value of $2,700; that no part of the price had been paid, except $150 paid November 1, 1874; and that there is now due plaintiff therefor, $2,550, with interest from January 1, 1875. The answer denies all these allegations.

On the trial, it appeared that plaintiff, in October, 1874, was indebted to the defendant company between $500 and $600; that he owned machinery of the general character of that described in the complaint, which was then in a mill at Green Bay, and which he desired to sell; that one Pettibone had formerly been in defendant's employ at its works, but was then selling machinery on commission, not only for defendant but also for other corporations and individuals, and was known by plaintiff to be so engaged; that Pettibone had negotiations with the various parties concerned, with a view to a sale of said machinery to one Miller, at Wausau; that, as a result of these negotiations, Miller sent an order directed to the defendant for machinery such as is described in the complaint, for which he agreed to pay $2,700, viz.: a draft for $150 immediately, $300 in thirty days, and the remainder in certain described installments and securities. This order was shown by Pettibone to the plaintiff, who agreed to furnish his machinery upon the terms mentioned therein. Shortly after, plaintiff received from Burns, the secretary of the defendant company, Miller's draft for $150, and about the same time shipped the machinery to Miller. About the same time plaintiff drew an order upon Miller in favor of the defendant company for $500; and he testifies: "I supposed I was selling the machinery by Pettibone, as my agent, and I thought I had a right to draw the order." His testimony also tends to show that he negotiated with Pettibone with the understanding that he was to pay the latter a commission for effecting the sale. Miller refused to pay the order above mentioned,

and it was returned to the plaintiff by Burns. At the same time, Miller refused to take the machinery, alleging that it was not such as he had ordered. Shortly afterwards, in obedience to a telegram from Pettibone, plaintiff met the latter and Miller at Stevens Point. In reference to this interview, plaintiff testifies: "I saw Mr. Miller at Stevens Point, and went with him to Wausau, and asked him if any other arrangements could be made. He had received the machinery and paid the freight; and he said No, that he did not want the machinery. Then I made arrangements to ship to some place on the Wisconsin Central Railroad, but Miller refused to give up the machinery unless he got back what he had paid. Finally he agreed to pay $500 cash down. I told him that we could straighten that up and deliver it to him.* I told him I would stay over another day, and he decided to do it." The witness was then asked by his own counsel: "With whom did Mr. Miller say that he had made the contract?" An objection to the evidence was overruled, and the witness answered: "He stated that he had made the contract with the *Monitor Iron Works Company;* and then he said, 'Tell the company to draw on me for $500.' On my return I told Mr. Burns what I had done, and told him to draw on Miller for $500." It appears that by the original contract, $600 would have become due from Miller about that time, and that the company drew upon him for that amount, instead of $500, but the draft was not honored.

Other evidence on plaintiff's part was designed to show that the transaction was a sale by him to defendant, and that the machinery was delivered at the place of shipment to Pettibone as defendant's agent. The evidence for defendant tended to show that Pettibone was not its agent, except so far as he was authorized to sell on commission machinery of de-

---

* Some words of the witness are apparently omitted here, showing that Miller had spoken of the nondelivery of the engine, which had been detained at Green Bay in order to have certain changes made.

fendant's own manufacture; that the machinery in question was sold by plaintiff, through Pettibone as his agent, to Miller; and that defendant merely assisted in negotiating the sale, arranging with Miller, for their mutual protection, that the first payments should be made to the defendant, because Miller preferred that the latter, rather than the plaintiff, should be responsible to him for the delivery of the machinery as ordered, or repayment of the money advanced by him previous to such delivery; while defendant wished to secure payment of plaintiff's indebtedness to it out of the first money payments that became due subsequent to such delivery.

An instruction asked by the defendant, and refused, is stated in the opinion. The other instructions are not important here.

The plaintiff had a verdict; a new trial was denied; and defendant appealed from a judgment on the verdict.

*W. J. Lander*, for appellant.

For the respondent, a brief was filed by *Hudd & Wigman*, and there was oral argument by *Mr. Hudd*.

COLE, J. Quite a number of exceptions were taken to the rulings of the court below, and are relied on here; but we have not time to consider them, and shall not attempt to do so. The judgment must be reversed on account of the error in allowing the plaintiff, against the defendant's objection, to give in evidence the statement of Miller in respect to making the contract for the purchase of the machinery in question with the defendant. These declarations were clearly inadmissible, and, under the circumstances, could hardly fail to prejudice the defense.

The main issue in the case was, whether the plaintiff ever made a contract for the sale of the machinery to the defendant. He claimed that he did, through Pettibone, who acted as agent for the company in making the purchase. The defendant claimed that it never purchased the machinery; that

it never authorized Pettibone to purchase it on its behalf; and that whatever was done by its officers or by Pettibone in negotiating a sale with Miller, was done to aid the plaintiff in making a sale. Such being the issue, and the testimony as to whether a contract of sale was actually made with the defendant being conflicting, it is manifest that the declarations of Miller that he had made the contract with the defendant as the owner of the property, were calculated to influence the minds of the jurors. It needs no argument to show that, by all well settled rules of evidence, the declarations of Miller upon the subject were inadmissible.

The learned county court gave a number of instructions which were excepted to, and refused to give requests asked on the part of the defendant. Without noticing in detail these various instructions given and refused, we think the following one should have been given. The court was asked to charge that if Pettibone was the agent of the plaintiff to sell the machinery, he could not at the same time be the agent of the defendant to buy it; and that if the jury found such to be the fact, there could be no recovery. It seems to us plain that Pettibone could not act as agent of the plaintiff in selling the property, and at the same time act as agent for the defendant in buying it. The testimony offered on the part of the plaintiff tended to prove that he attempted to perform these utterly inconsistent duties. It is difficult to understand how a man can make a valid contract with himself (see *Meyer v. Hanchett*, 39 Wis., 419), and, without the authority or consent of the parties interested, act as the agent of both vendor and purchaser in the same transaction.

But for the error in admitting the declarations of Miller, there must be a new trial.

*By the Court.* — The judgment of the county court is reversed, and a new trial ordered.